IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MACNEIL IP LLC, an Illinois Limited Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) ) | |
| DESIGN ELEMENT GROUP INC., d/b/a DESIGN ELEMENT, a California Corporation, | ) ) ) ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiff MacNeil IP LLC ("MacNeil"), by and through its undersigned counsel, and for its Complaint against Defendant, Design Element Group, Inc. d/b/a Design Element ("Design Element") alleges as follows:

### **Nature of the Action**

1. This is an action against Defendant for patent infringement, federal trademark infringement, counterfeiting, federal unfair competition, common law trademark infringement, common law unfair competition and violation of the Illinois Uniform Deceptive Trade Practices Act.

### **Parties**

2. MacNeil is an Illinois limited liability company with a principal place of business located at 1 MacNeil Court, Bolingbrook, Illinois.

3. Upon information and belief, Defendant Design Element is a California corporation with its principal place of business located in Rancho Cucamonga, California.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 and §1338(a) because MacNeil's claims for patent infringement, federal trademark infringement, counterfeiting and federal unfair competition arise under the laws of the United States.

5. This Complaint also includes a claim for common law unfair competition. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1338(b), as its claim for common law unfair competition is joined with a substantial and related claim under the patent laws, 35 U.S.C., and further is joined with a substantial and related claim under the federal trademark laws, 15 U.S.C.

6. This Complaint also includes claims for common law trademark infringement and violation of the Illinois Uniform Deceptive Trade Practices Act, 15 ILCS 510. This Court has supplemental subject matter jurisdiction over the claims for common law unfair competition, common law trademark infringement and the Illinois Uniform Deceptive Trade Practices Act under 28 U.S.C. § 1367(a) because these claims are so related to at least one of the remaining claims in this complaint that they form part of the same case or controversy under Article III of the United States Constitution.

7. This Court has personal jurisdiction over Defendant because it transacts business in this District by, on information and belief, using, offering to sell and selling products, including its accused "No Stack" pallet cone, to customers in this district.

8. Venue is proper in this District under 28 U.S.C §1391(b) and §1400(b) because Defendant is subject to personal jurisdiction in, does business in and has committed acts of

infringement in this District and has systemic and continuous business connections and contacts with this District.

## Factual Background

9.   On June 23, 1998, the United States Patent and Trademark Office ("USPTO") granted U.S. Patent No. 5,769,598 ("the '598 Patent") entitled Antistacking Warning Device and Stacking Damage Detector and naming David F. MacNeil as the inventor.  A true and accurate copy of the '598 Patent is attached as Exhibit 1.

10. The '598 Patent is valid, in-force and unexpired.

11. As of April 13, 2010, MacNeil became the owner by assignment of all legal right, title and interest in and to the '598 Patent.  The assignment was recorded at the USPTO on April 13, 2010 under Reel 24233, Frame 977.

12. On June 15, 1999, the USPTO granted Registration No. 2,254,391 on the Principal Register for the trademark "NO STACK" (the "Mark" or "MacNeil's Mark"), for use in connection with geometrically shaped hollow cardboard structures for use as stacking deterrent and detection devices for affixation to the tops of shipping pallets, in International Class 016. The registration has been renewed and remains in force.  A true and accurate copy of the Certificate of Registration is attached as Exhibit 2.

13. As of May 5, 2010, MacNeil became the owner by written assignment of all legal right, title and interest in and to the Mark, and to the goodwill of the business represented by the Mark.  The assignment was recorded in the USPTO and MacNeil continues to be the owner of said Trademark Registration.

14. The validity of the registered Mark and of the registration of the Mark, MacNeil's ownership of the Mark, and MacNeil's exclusive right to use the Mark in commerce for the

above mentioned goods, are incontestable under 15 USC § 1065 and 1115(b), as MacNeil has filed the required Declaration in the USPTO.

15. The geometrically shaped hollow cardboard structure as sold by MacNeil's licensees under the Mark and under the '598 Patent has a four-sided pyramidal body. The structure nonetheless is referred to by MacNeil, MacNeil's licensees and others as a "pallet cone."

16. Continuously since on or about November 12, 1997, MacNeil, its predecessor in interest, David F. MacNeil, and their licensees have used the mark NO STACK to identify their pallet cones and to distinguish their goods from those made and sold by others, by, among other things, prominently displaying the mark NO STACK on the goods, on their containers and on displays associated therewith. In addition, MacNeil, its predecessor in interest and their licensees have prominently displayed the Mark in advertising for the goods.

17. A photograph of a representative pallet cone sold by one of MacNeil's licensees is attached as Exhibit 3. Details showing the intellectual property notices on the pallet cone are attached as Exhibits 4A and 4B. As can be seen in Exhibit 4B, the mark NO STACK is followed with the prescribed registration notice (®). As can be seen in Exhibit 4A, the cone is further marked with the legends, "U.S. PATENT # 5769598".

18. The Mark was first used on pallet cones on November 12, 1997 and the Mark has continuously been used on pallet cones since that date, in commerce which may be regulated by Congress, including but not limited to interstate commerce.

19. Since 1997 and through its licensees, MacNeil and its predecessor in interest have developed substantial goodwill in the NO STACK trademark through advertising, industry recognition, sales and a history of providing high quality products under the Mark.

-4-

20. Upon information and belief, Defendant Design Element manufactures and uses a "No Stack" pallet cone (hereinafter, the "Infringing Product") and distributes, offers for sale and sells the Infringing Product to its distributors, resellers, and end-users. A photograph of the Infringing Product is attached as Exhibit 5.

21. The Infringing Product is marked with "NO STACK" (the "Infringing Mark"). *See* Exhibit 5. Like MacNeil's product, the Infringing Product has a four-sided pyramidal body, but will nonetheless will sometimes be referred to herein as a pallet cone.

22. The Infringing Product is identical to MacNeil's product in height, shape of each pyramidal face, number of sides of the pyramid, method of joining the free sides of the pyramid together, shape of the strap cutout and shape of the tape flap. Further, the Infringing Product is a copy of the following wording found on MacNeil's product: NO STACK, as found on the upper portion of each pyramid face; "*FRAGILE*", positioned on each face above the strap cutout, in italics, in capital letters and underlined; and "Tape all four flaps / to top of pallet or strap", set forth in two lines on each tape flap, all of the wording being set forth in sans-serif lettering even as the corresponding wording appears on MacNeil's pallet cones.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 5,769,598

23. Upon information and belief, without the consent of MacNeil, Defendant has made, used, sold and/or offered for sale the Infringing Product which directly infringes, either literally or through the doctrine of equivalents, at least one claim of the '598 Patent.

24. Upon information and belief, without the consent of MacNeil, Defendant has committed acts that constitute inducement of infringement of at least one claim of the '598 Patent by others through its acts of making, selling and/or offering to sale the Infringing Product.

-5-

25. Upon information and belief, without the consent of MacNeil, Defendant has sold and/or offered to sell a component of a manufacture or combination claimed by at least one claim of the '598 Patent, or apparatus for use in practicing a method covered by at least one claim of the '598 Patent, which component or apparatus consists of a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '598 Patent, and not being a staple article or commodity of commerce suitable for substantial noninfringing use.

26. As a direct and proximate result of Defendant's direct infringement of the '598 Patent, inducement to infringe the '598 Patent and/or contributory infringement of the '598 Patent, MacNeil has suffered and will continue to suffer irreparable injury, and damages in an amount not yet determined, for which MacNeil is entitled to relief.

27. Upon information and belief, Defendant's direct infringement, indirect infringement and/or inducement to infringe the '598 Patent has been and continues to be willful and deliberate.

28. WHEREFORE, MacNeil prays for entry of judgment in its favor and against Defendant as follows:

A.     Enter judgment that Defendant has directly infringed the '598 patent;

B.     Enter judgment that Defendant has induced others to infringe the '598 Patent;

C.     Enter judgment that Defendant has contributorily infringed the '598 patent;

D.     Enter judgment that Defendant has willfully infringed the '598 patent;

E.     Enter judgment that this case is found to be an "exceptional case" under 35 U.S.C. § 285;

F.     Enter a permanent injunction, pursuant to 35 U.S.C. § 283, restraining and enjoining Defendant and its respective officers, agents, servants, employees, attorneys,

customers and those in concert or participation with Defendant from any further sales of the Infringing Products and any other infringement of the '598 patent, whether direct or indirect;

G.    Enter judgment ordering Defendant to compensate MacNeil for Defendant's infringement of the '598 patent pursuant to 35 U.S.C. § 284;

H.    Enter a judgment ordering Defendant to pay enhanced damages pursuant to 35 U.S.C. § 284;

I.    Enter a judgment for an award of pre-judgment and post-judgment interest and costs to MacNeil pursuant to 35 U.S.C. § 284;

J.    Enter a judgment for an award of MacNeil's reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

K.    Enter a permanent injunction pursuant to 35 U.S.C. § 283, restraining and enjoining Defendant and their respective officers, agents, servants, employees, attorneys, customers and those in concert or participation with Defendant, from offering for sale or selling the Infringing Products, and requiring destruction of all molds, dies and tooling related to the Infringing Products; and

L.    Grant MacNeil such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT II – FEDERAL TRADEMARK INFRINGEMENT

29. MacNeil restates and realleges Paragraphs 1 through 22 as if fully set forth herein.

30. Upon information and belief, without the consent or authority of MacNeil, Defendant has distributed, sold and/or offered for sale, in commerce, the Infringing Product as imprinted with the words "NO STACK" (the "Infringing Mark"), which constitutes willful and intentional infringement of the Mark. *See* Exhibit 5.

31. Upon information and belief, Defendant began using the Infringing Mark on the Infringing Product on a date far junior to the date of first use of the Mark, far junior to the date of first use of the Mark in commerce, far junior to the date on which Plaintiff's predecessor in interest applied for registration of the Mark, and far junior to the date on which the USPTO granted Plaintiff's predecessor in interest a registration of the Mark on the Principal Register.

32. The use by Defendant of the Infringing Mark as above alleged is likely to cause confusion, to cause mistake and to deceive. Defendant's use of the Infringing Mark creates the false impression that Defendant and/or Defendant's Infringing Product is authorized, sponsored or approved by MacNeil.

33. Upon information and belief, Defendant had both actual and constructive notice of Plaintiff's registration at the time that Defendant started to use the Infringing Mark. Upon information and belief, Defendant's use of the Infringing Mark has continued despite having full notice and knowledge of MacNeil's prior rights.

34. On information and belief, Defendant's acts of infringement are willful, were done in bad faith and conscious disregard of MacNeil's rights in the Mark, and were intended to cause confusion, to cause mistake and to deceive.

35. Defendant's unauthorized use of the Mark has resulted in Defendant unfairly benefiting from MacNeil's advertising and promotion and profiting from MacNeil's reputation and registered trademark to the substantial and irreparable injury of the public, MacNeil, the Mark and the goodwill represented thereby.

36. Defendant's acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

37. Defendant's acts have caused, and will continue to cause, great and irreparable injury to MacNeil.

38. MacNeil has no adequate remedy at law and is suffering and will continue to suffer irreparable harm and damage as a result of the aforesaid acts of Defendant in an amount to be determined at trial.

## COUNT III -- COUNTERFEITING

39. MacNeil restates and realleges Paragraphs 1 – 22 and 30 – 35 as if fully set forth herein.

40. The goods to which Defendant has applied The Infringing Mark are geometrically shaped hollow cardboard structures for use as stacking deterrent and detection devices for affixation to the tops of shipping pallets.

41. The Infringing Mark is identical to MacNeil's Mark.

42. Since the Infringing Mark is used on goods identical to the goods for which MacNeil has obtained a registration on the Principal Register, and since Defendant was not authorized to so use the Infringing Mark, the Infringing Mark is a counterfeit mark as defined by 15 U.S.C. § 1116(d)(1)(B)(i).

43. Defendant has intentionally used the Infringing Mark, knowing that the Infringing Mark is a counterfeit mark, in connection with the sale, offering for sale, and /or distribution of the Infringing Products.

44. Defendant's use of the mark constitutes counterfeiting under 15 U.S.C. § 1116(d)(1)(B)(i) and 1117(b)(1).

45. Defendant's acts have caused, and, if not restrained and enjoined, will continue to cause, great and irreparable injury to MacNeil.  It would be difficult to ascertain the amount of

compensation which could afford MacNeil adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required.

46.     MacNeil's remedy at law is not adequate to compensate it for the injuries threatened.

### COUNT IV – FEDERAL UNFAIR COMPETITION

47.      MacNeil restates and realleges Paragraphs 1 – 22 and 30 – 34 as if fully set forth herein.

48.     Defendant has intentionally and willfully adopted, and is using in interstate commerce, in connection with the advertising, promotion and sale of its Infringing Product, a mark that is an imitation of MacNeil's Mark "NO STACK."

49.     The Infringing Product advertised, distributed, offered for sale and sold by Defendant replicates and imitates the trade dress and product configuration of MacNeil's pallet cone, as it is precisely the same size and shape and uses similar legends on its faces, in similar placements on those faces, and in a font that imitates what MacNeil uses on its pallet cone.

50.     Continuously since on or about November 12, 1997, MacNeil, its predecessor in interest and their licensees have marketed, offered for sale, sold and distributed pallet cones on which the mark NO STACK is imprinted, said pallet cones having a uniform and precise size and shape and lettering.  *See* Exhibit 3.  An image of MacNeil's NO STACK pallet cone prominently appears on a web site acting as a display associated with the goods and controlled by MacNeil's affiliate, MacNeil Automotive Products Ltd.   MacNeil's pallet cones are distributed within the area in which Defendant does business and the web site is available to the public anywhere where the World Wide Web can be accessed.

51.     As a result of the sales and advertising of MacNeil's pallet cones, the relevant public in defendant's trade area have come to associate the precise size and shape of MacNeil's pallet

-10-

cone, and the placement and content of the lettering appearing thereon, as having a distinctive and secondary meaning as indicia of the source, origin or sponsorship of MacNeil's pallet cone.

52.     The unauthorized use by Defendant by of the Infringing Mark on a studied imitation of MacNeil's pallet cone is likely to cause confusion, or to cause mistake, or to deceive, in the minds of the relevant public, as to the affiliation, connection or association of Defendant with MacNeil, or as to the origin, sponsorship or approval of Defendant's Infringing Products by MacNeil.

53.     MacNeil has been, is, and will continue to be damaged by the Defendant's actions and MacNeil does not have an adequate remedy at law.  Defendant's actions have damaged, and will continue to damage, MacNeil's business, market, reputation and goodwill, in an amount to be determined at trial.

<u>COUNT IV – COMMON LAW TRADEMARK<br>INFRINGEMENT</u>

54.     MacNeil restates and realleges Paragraphs 1 through 22 and 30 through 34 as if fully set forth herein.

55.     MacNeil's Mark is distinctive of pallet cones in the minds of the relevant public as denoting a single source, origin or sponsorship of such pallet cones.

56.     MacNeil is the owner of all right, title and interest in and to the MacNeil Mark used by MacNeil, MacNeil's predecessor in interest and their licensees by virtue of their extensive manufacture and sale of products bearing the Mark, as set forth in the preceding paragraphs of this Complaint.

57.     The Infringing Product advertised, distributed, offered for sale and sold by Defendant bears a mark that replicates and imitates MacNeil's common law trademark.  Such unauthorized use by Defendant of an imitation of MacNeil's common law trademark constitutes trademark

infringement in Illinois common law, and is likely to cause confusion and mistake in the minds of the purchasing public as to the source of the products and to cause purchasers to believe such products are products authorized by MacNeil when, in fact, they are not.

58.     Upon information and belief, Defendant has willfully and intentionally misappropriated MacNeil's common law trademark with the intent of causing confusion, mistake, and deception as to the source of its goods and with the intent to palm off its goods as those of MacNeil's and to place others in the position to palm off its goods as those of MacNeil's, and as such, Defendant has committed trademark infringement under Illinois common law.

59.     By such actions in infringing MacNeil's common law trademark, Defendant is improperly trading upon the enviable reputation and goodwill of MacNeil and impairing MacNeil's valuable rights in and to such trademark.

60.     Upon information and belief, Defendant committed the above alleged acts in conscious disregard of MacNeil's rights, and MacNeil is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of Illinois.

61.     MacNeil has no adequate remedy at law.  The conduct of Defendant has caused and, if not enjoined, will continue to cause, irreparable damage to MacNeil's rights in and to its trademark, and to MacNeil's business, reputation and goodwill.

## COUNT V – COMMON LAW UNFAIR COMPETITION

62.     MacNeil restates and realleges Paragraphs 1 through 22, 30 through 34 and 48 through 52 as if fully set forth herein.

63.      MacNeil's Mark is distinctive of pallet cones in the minds of the relevant public as denoting a single source, origin or sponsorship of such pallet cones.

64.     The precise shape of MacNeil's pallet cone, and the content and positioning of the lettering on MacNeil's pallet cone, are a trade dress and product configuration which have become distinctive of pallet cones in the minds of the relevant public as denoting a single source, origin or sponsorship of such pallet cones.

65.     MacNeil is the owner of all right, title and interest in and to the MacNeil Mark and the trade dress and product configuration used by MacNeil and MacNeil's licensees by virtue of their extensive manufacture and sale of products bearing the Mark, either directly or indirectly, as set forth in the preceding paragraphs of this Complaint.

66.     The Infringing Product advertised, distributed, offered for sale and sold by Defendant bears a mark that replicates and imitates MacNeil's common law trademark.  The Infringing Product otherwise is a studied imitation of the product configuration of MacNeil's pallet cone.  Such unauthorized use by Defendant of an imitation of MacNeil's common law trademark and product configuration constitutes unfair competition at the common law, and is likely to cause confusion and mistake in the minds of the purchasing public as to the source of the products and to cause purchasers to believe such products are products authorized by MacNeil when, in fact, they are not.

67.     Upon information and belief, Defendant has willfully and intentionally misappropriated MacNeil's common law trademark and product configuration with the intent of causing confusion, mistake, and deception as to the source of its goods and with the intent to palm off its goods as those of MacNeil's and to place others in the position to palm off its goods as those of MacNeil's, and as such, Defendant has committed unfair competition under the common law.

68. By such actions in infringing MacNeil's common law trademark, trade dress and product configuration, Defendant is improperly trading upon the enviable reputation and goodwill of MacNeil and impairing MacNeil's valuable rights in and to such trademark.

69. Upon information and belief, Defendant committed the above alleged acts in conscious disregard of MacNeil's rights, and MacNeil is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of Illinois.

70. MacNeil has no adequate remedy at law. The conduct of Defendant has caused and, if not enjoined, will continue to cause, irreparable damage to MacNeil's rights in and to its trademark, and to MacNeil's business, reputation and goodwill.

## COUNT VI – VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 510/2

71. MacNeil restates and realleges Paragraphs 1 through 22 as if fully set forth herein.

72. Defendant has passed off and is passing off its pallet cones as authentic pallet cones originating from MacNeil.

73. Defendant has caused and is causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of Defendant's pallet cones.

74. Defendant has caused and is causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, MacNeil.

75. By its acts recited in any of the above three paragraphs, Defendant has committed and continues to commit a deceptive trade practice proscribed by 815 ILCS 510 2(a).

76. Upon information and belief, in committing any of the above alleged acts, Defendant willfully engaged in a deceptive trade practice, and MacNeil is therefore entitled to both costs and attorney's fees, as well as exemplary and punitive damages.

-14-

77.     MacNeil has no adequate remedy at law.  The conduct of Defendant has caused and, if not enjoined, will continue to cause, irreparable damage to MacNeil's rights in and to its trademark, trade dress and product configuration, and to MacNeil's business, reputation and goodwill.

<u>**PRAYER FOR RELIEF, COUNTS II - VI**</u>

WHEREFORE, MacNeil prays for entry of judgment in its favor and against Defendant as follows:

A.     Enter a permanent injunction restraining and enjoining Defendant and all of its agents, affiliates, partners, servants, employees, successors and assigned from:

    1.     Selling, marketing or advertising products or services under the Infringing Mark or any other mark confusing similar to the Mark;

    2.     Selling, marketing or advertising products that are an imitation of the distinctive product configuration and trade dress of MacNeil's pallet cone;

    3.     Causing a likelihood of confusion or misunderstanding as to source, sponsorship by, approval of, affiliation with, connection with, association with, or certification of its products by MacNeil or engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding or false representation with respect to MacNeil.

B.     Award MacNeil damages in an amount sufficient to compensate it for the injuries it has sustained by reason of Defendant's unlawful acts, including MacNeil's loss of goodwill, loss of past and/or future sales, and damages caused by Defendant's acts of federal trademark infringement, federal unfair competition as well as for

State common law trademark infringement, unfair competition and deceptive trade practices.

C. That MacNeil be awarded increased damages based upon the intentional and willful nature of Defendant's conduct of the kind complained of herein.

D. That the Court issue an order requiring Defendant to pay to MacNeil such damages as MacNeil has sustained as a consequence of Defendant's infringement of MacNeil's Mark and unfair competition and to account for all gains, profits, and advantages derived by Defendant from the sale of its infringing merchandise bearing the MacNeil Mark and that the award to MacNeil be trebled as provided for under 15 U.S.C. § 1117; alternatively, that MacNeil be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $1,000,000 for Defendant's willful counterfeiting and infringement.

E. That the Court issue an order that MacNeil recover the costs of this action together with reasonable attorneys' and investigators' fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

F. That MacNeil be awarded punitive damages for Defendant's willful and malicious acts of common law trademark infringement and unfair competition.

G. That Defendant be ordered to deliver up for destruction all dies, jigs, fixtures, advertisements, circulars, brochures, and any other items in its possession, custody or control bearing the Mark or used in creating pallet cones having MacNeil's distinctive trade dress and product configuration.

H. Grant MacNeil such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## **JURY DEMAND**

MacNeil demands a trial by jury on all issues so triable.

Respectfully submitted,

MACNEIL IP LLC,

Dated: April 5, 2016     By:     /s/ Timothy M. Schaum

One of Its Attorneys

Timothy M. Schaum
*tschaum@daspinaument.com*
DASPIN & AUMENT, LLP
227 West Monroe
Suite 3500
Chicago, Illinois 60606
(312)258-1600